IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL, <br><br> PLAINTIFF, <br><br> v. <br><br> DILLON GAGE INCORPORATED OF DALLAS AND DILLON GAGE INC., <br><br> DEFENDANTS, | § § § § § § § § § § § § § § | |
| DILLON GAGE INCORPORATED OF DALLAS, <br><br> COUNTER-PLAINTIFF, <br><br> v. <br><br> STANFORD COINS & BULLION, INC., TIMOTHY SCOTT TERRY, AND JOSEPH A. FRISARD, <br><br> THIRD-PARTY/COUNTER-DEFENDANTS. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:10:-CV-1973 |

**DILLON GAGE INCORPORATED OF DALLAS' RESPONSE
TO THE RECEIVER'S MOTION TO STRIKE
AND TO DISMISS THIRD-PARTY CLAIMS AND COUNTERCLAIMS**

Dillon Gage Incorporated of Dallas ("Dillon Gage") files this Response to the Receiver's

Motion to Strike and to Dismiss Third-Party Claims and Counterclaims and shows as follows:

# I.
## PRELIMINARY STATEMENT

This is a case about a gold bullion trading relationship between Dillon Gage and Stanford Coins & Bullion, Inc. ("SCB").  In 2009, SCB ordered gold bullion from Dillon Gage.  At the instruction of and based on payment assurances from the counter-defendants, Timothy Scott Terry and Joseph Frisard, Dillon Gage applied SCB's payments to SCB's outstanding account balance.  Before Dillon Gage could deliver the gold, Stanford's ponzi scheme collapsed and this Court entered a receivership order (the "Receivership Order).  As alleged, there is no allegation that Stanford used SCB in the ponzi scheme.  Yet, the Receiver sued Dillon Gage in an effort to avoid certain transactions between SCB and Dillon Gage.  Dillon Gage sought to defend itself by filing an answer and a compulsory counterclaim.   The Receiver wants this Court to dismiss Dillon Gage's claims and to address them piecemeal sometime in the future.

# II.
## ISSUE PRESENTED

This procedural dispute boils down to a very succinct question about how to interpret the Receivership Order such that it complies with due process and advances judicial economy:

> Paragraph 9 of the Receivership Order authorizes anyone to commence actions against the Receiver *in this Court*.  Consistent with Paragraph 9, Dillon Gage answered the Receiver's lawsuit and filed a compulsory counterclaim and a third-party complaint.  The Receiver wants the Court to dismiss those claims, citing Paragraph 10 of the Receivership Order, which addresses collection efforts.  In order to provide due process and to promote judicial economy, should the Court deny the Receiver's motion?

# III.
## SUMMARY OF ARGUMENT

The Court should deny the Receiver's motion for at least three reasons.  First, the Receiver's interpretation of the injunctive provisions of the Receivership Order deprives Dillon Gage of its due process rights and is inconsistent with the Federal Rules of Civil Procedure.

Second, assuming the allegations in the Receiver's complaint are true, Dillon Gage has been damaged and the counterclaim and third-party claims are ripe for adjudication. Finally, the Receiver's purported claims process is illusory and cannot provide any, much less adequate, protection to Dillon Gage.

## IV.
### STANDARD FOR DISMISSAL AND STRIKING OF PLEADINGS

The Receiver moved to strike and dismiss Dillon Gage's third-party claims and counterclaims under Rules 12(f) and 12(b)(1) and (6), respectively. Striking pleadings under Rule 12(f) is a drastic remedy viewed with disfavor by the courts and infrequently granted.[1] A motion to strike should be granted only when the pleading has no possible relation to the controversy or no bearing on the subject matter of the litigation.[2]

The standard for dismissal under Rule 12(b)(6) is similarly harsh, and such motions are rarely granted.[3] In evaluating a motion to dismiss, courts view all facts in the light most favorable to the claimant and resolve any doubts in its favor.[4] Courts also assume the truth of all pleaded facts and liberally construe a claim to avoid dismissing it.[5] To survive dismissal, the facts need only be sufficient to make the claim "plausible" on its face.[6]

## V.
### ARGUMENTS AND AUTHORITIES

---

[1] *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993); *see also Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982); *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 767 (N.D. Tex. 2002) (holding that "motions to strike are disfavored and infrequently granted").

[2] *Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.*, F.2d 862, 868 (5th Cir. 1962); *Cushman & Wakefield, Inc.*, 275 F. Supp. 2d at 768.

[3] *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

[4] *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

[5] *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

[6] *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009).

### A. Due Process Entitles Dillon Gage to Assert its Claims

The Receiver contends that Dillon Gage cannot assert its counterclaim and third-party claims because the Receivership Order enjoins all litigation against Receivership entities and former employees of those entities. To interpret the Receivership Order in such a manner defies logic and deprives Dillon Gage of its rights to procedural and substantive due process. Such an interpretation is contrary to public policy.

A fair interpretation of the Receivership Order promotes due process. For example, Paragraph 9 of the Receivership Order authorizes the commencement and continuation of claims in this Court:

> Creditors and all other persons are hereby enjoined from the following actions, ***except in this Court*** … the commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of this litigation."[7]

Paragraph 9 of the Receivership Order merely precludes creditors from commencing or continuing any action against the Receiver *outside of this Court*.[8] It does not require leave of court to commence or continue an action to liquidate a claim against the Receiver in this Court.

Here, Dillon Gage has not initiated an action in another court; it has only answered the Receiver's allegations in this case in this Court. Yet, the Receiver argues that Paragraph 10 of the Receivership Order enjoins the commencement or continuation of a lawsuit. But Paragraph 10 only addresses the necessity of court approval for certain acts regarding collection and realization of claims against Receivership assets. Specifically, that paragraph provides that

---

[7] Second Amended Order Appointing Receiver [Cause No. 3:09-cv-0298-N, Doc. 1130 at ¶ 9(a)](emphasis added).

[8] *See id.* at ¶ 9(a).

creditors and all other persons are "restrained and enjoined, without prior approval from the Court, from:

> (a) Any act to obtain possession of the Receivership Estate assets;
>
> (b) Any act to create, perfect, or enforce any lien against the property of the Receiver or the Receivership Estate;
>
> (c) Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate;
>
> (d) The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate."[9]

Essentially, Paragraph 10 contemplates efforts to monetize or satisfy a liquidated claim against the Receivership Estate. While Paragraph 10(c) makes reference to "assess," which could be construed to mean "determine a claim," that construction cannot be harmonized with Paragraph 9's specific reference to and authorization of judicial proceedings *in this Court*. Regardless, Paragraph 10 does not apply to Dillon Gage, who is merely answering and defending the Receiver's claim within the confines of the Federal Rules of Civil Procedure.

Although the Receiver derives broad authority from the Receivership Order, that authority is not unlimited. In multiple instances, the Receiver has argued that the injunctive provisions of the Receivership Order are intended to curb the multiplicity of lawsuits that the Receiver would (and did) face from aggrieved Stanford investors.[10] That is not Dillon Gage's

---

[9] *See* Second Amended Order Appointing Receiver [Cause No. 3:09-cv-0298-N, Doc. 1130 at ¶ 10(a)-(d)].

[10] *See S.E.C. v. Stanford Int'l Bank, Ltd., et al.,* Cause No. 3:09-cv-00298-N (N.D. Tex. Mar. 16, 2009), Doc. 172 at Pages 4-5 (Receiver arguing in opposition to Motion to Lift Injunction on the grounds that lifting the Order's injunction on litigation would result in "piecemeal litigation conducted in different jurisdictions with different outcomes, all of which would have a detrimental impact on the Receivership Estate and other claimants"); *id*. at Doc. 175 at Page 7 (same); *id*. at Doc. 549 at Page 22 (Receiver arguing for injunction and against intervention on the grounds that "[allowing] Movants to intervene will undoubtedly cause countless other creditors to file motions for intervention as well"); *see Trustmark National Bank v. HP Financial Services Venezuela, C.C.A., et al.,* Cause No. 3:09-cv-00633-N (N.D. Tex. June 12, 2009), Doc. 11 at Pages 5-6 (Receiver arguing for abatement of suit against the Receiver on the ground that allowing the suit to proceed "undoubtedly will cause multiple other potential plaintiffs to file lawsuits or proceed with suits they have voluntarily stayed in light of the Court's orders in the SEC Action"); *see Trustmark National Bank v. Cisco Systems Capital Corp., et al.,* Cause No. 3:09-cv-00647-N (N.D. Tex. June 12, 2009), Doc. 12 at Page 5 (same).

situation, and this is not an independent action against the Receiver. Dillon Gage is merely a party *answering and seeking to defend itself from the Receiver's lawsuit*.

Moreover, the Receiver's arbitrary and capricious use of the injunctive provisions of the Receivership warrants denial of the Receivers attempts in this case. For example, in response to the Receiver's numerous complaints, former Stanford employees, as well as investors, businesses, and other individuals have filed dozens of counterclaims against the Receiver.[11] In many of those cases, the Receiver has filed an answer.[12] This is fundamentally inconsistent with the Receiver's position in this proceeding. If the injunctive provisions of the Receivership Order are as broad as the Receiver claims, then, as an adjunct of this Court, he must establish a Constitutional basis to apply the injunctive provisions to Dillon Gage but not to others. Dillon Gage submits that no such basis exists nor could it.

Because Dillon Gage must answer the Receiver's complaint, it must raise its counterclaims in a responsive pleading. Under Rules 7 and 13 of the Federal Rules of Civil Procedure, counterclaims are part of a defendant's pleading and are appropriately asserted in an answer.[13] Failing to file its claims in this action would preclude Dillon Gage from raising these claims in another lawsuit.[14] Again, this is a matter of due process and Dillon Gage's rights under the Federal Rules of Civil Procedure. Dillon Gage's first responsive pleading is the appropriate time and place to assert its counterclaims and third-party claims.[15] Accordingly, the Court

---

[11] *See, e.g., Janvey v. Alguire*, 3:09-cv-00724-N, Documents 46, 55, 114, 138, 146, 206, 245-286, 297, 331-333, 338, 434, 437, 488; *Janvey v. Wieselberg*, 3:10-cv-01394-N, Documents 9, 11; *Janvey v. Venger*, 3:10-cv-00366-N, Documents 22-25, 27.

[12] *See, e.g., Janvey v. Alguire*, 3:09-cv-00724-N, Documents 172, 307, 308, 309, 345, 449, and 450; *Janvey v. Wieselberg*, 3:10-cv-01394-N, Documents 13 and 16; *Janvey v. Venger*, 3:10-cv-00366-N, Documents 42 and 43.

[13] *See* FED. R. CIV. P. 7(a) and 13.

[14] *See Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008) (holding that "failing to file a compulsory counterclaim does normally preclude its being made the subject of another lawsuit").

should deny the Receiver's motion and allow Dillon Gage to pursue its counterclaims and third-party claims.

### B. Ripeness is Not an Issue and Dillon Gage Can Assert its Claims

This case presents a ripe controversy, and Dillon Gage's claims are proper because the third-party/counter-defendants may be liable to Dillon Gage.

Federal Rule 14 allows a defendant to implead another party who "is or may be liable" to the defendant for all or part of the plaintiffs' claim.[16] The words "may be liable" mean that the defendant is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of plaintiff's action and will accrue when the defendant's liability is determined or the plaintiff's claim is satisfied.[17] Further, the words "is or may be liable" in Rule 14 establish that "impleader is proper even though the third-party defendant's liability is not automatically established once the third-party plaintiff's liability to the original plaintiff has been determined.[18]

For a third-party claim to be properly before the Court, the third-party defendant's liability must be (1) owed to the impleading party; (2) based on the underlying claim against the impleading party; and (3) derivative of the impleading party's liability.[19] This case meets those criteria. For example, the third-party/counter-defendants' liability is (1) owed to Dillon Gage; (2) based on the Receiver's claims against Dillon Gage; and (3) derivative of Dillon Gage's

---

[15] *See* FED. R. CIV. P. 7(a) and 13.

[16] *See* FED. R. CIV. P. 14(a)(1); *Discovery Group LLC v. Chapel Dev., LLC*, 574 F.3d 986, 989 at n* (8th Cir. 2009) (holding that Federal Rule of Civil Procedure 14 allows a defendant to implead another party "who is or may be liable" to the defendant for all or a part of the plaintiff's claim and that the words "may be liable" mean that defendant is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of the plaintiff's actions and will accrue when defendant's liability is determined…or plaintiff's claim is satisfied).

[17] *See Discovery Group.*, 574 F.3d at 989 n*.

[18] *Powell, Inc. v. Abney*, 83 F.R.D. 482, 486 (S.D. Tex. 1979).

[19] *Asher v. Unarco Material Handling, Inc.*, 2007 WL 3046064 at *5 (E.D. Ky. Oct. 16, 2007).

liability. Dillon Gage alleges that the third-party/counter-defendants made material and false misrepresentations regarding the financial strength, solvency, and stability of SCB to induce Dillon Gage to continue its business with SCB. SCB also made these representations with the intention that Dillon Gage rely upon them to its financial detriment. If the Receiver's allegations are true, then the third-party defendants' misrepresentations created liability for which they may be liable to Dillon Gage. The third-party defendants' liability is directly derivative of the veracity of the Receiver's allegations against Dillon Gage. Other courts have held that counterclaims of this nature are ripe for adjudication and should not be dismissed.[20] Therefore impleader of the third-party defendants is necessary and proper.[21]

### C. The Receiver's Claims Process is Illusory and Does Not Provide Adequate Protection to Dillon Gage

The Receiver's claims process—a mere link available on the Stanford Financial Group Receivership website—only provides a "Claimant Form" whereby an individual or entity can submit a brief narrative and the most basic information.[22] This Claimant Form is wholly insufficient to recognize, much less protect, a claimant such as Dillon Gage. Unfortunately, the so-called "procedures" do not provide any mechanism to resolve claims whatsoever. Moreover, the Receiver states that even if a proper claim is submitted through the claims process, merely "submitting a notice of claim at this time does not mean claimants will be receiving payment

---

[20] *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1171-1172 (9th Cir. 2001); *Stalsberg v. New York Life Ins. Co.*, 2007 WL 2572396 at *2 (D. Utah Sept. 5, 2007) (denying motion to dismiss defendants' counterclaim for misrepresentations relating to the validity of an insurance policy even though payment had not yet been made under the policy).

[21] *See Powell*, 83 F.R.D. at 486 (holding that product seller's counterclaim, in response to purchaser's action claiming breach of contract, which counterclaim alleged that if seller's claim to ownership of metal was correct, then third-party defendant misrepresented true state of facts concerning title to the goods and purchaser detrimentally relied on misrepresentation was a proper third-party complaint under Federal Rule of Civil Procedure 14).

[22] Stanford Financial Group Receivership Claimant Form, http://www.stanfordfinancialreceivership.com/claims.php (last visited March 23, 2011).

anytime soon."[23] Indeed, the Receiver has unequivocally stated there is no guarantee that any creditors "will receive anything in response to [a] claim."[24] This illusory claims process does not provide Dillon Gage with any procedural or substantive protections. The claims process is simply inadequate to resolve the dispute before the Court.

The Receiver seems content to rely on the existence of his claims procedure over the specific relief that Dillon Gage seeks. What the Receiver is really saying is that the Court should entertain piecemeal litigation and judicial waste by litigating this case in multiple pieces. This neither furthers the interests of justice nor promotes judicial economy. Instead of a piecemeal approach to resolution, the Court should allow the parties to litigate similar to an adversary proceeding in bankruptcy—a lawsuit conducted within the bankruptcy administration process.

## VI.
### CONCLUSION

The Receivership Order does not bar Dillon Gage's right to due process. All litigants brought before a court are entitled to defend themselves, and if necessary, to assert claims to remedy their injuries. The Receiver advocates a distorted reading of the Receivership Order; one that is fundamentally unfair. Assuming that the Receiver's allegations are true, Dillon Gage has been injured and a ripe controversy exists. Furthermore, the Receiver's so-called claims procedure is wholly inadequate to protect Dillon Gage from the injury caused by the third-party/counter-defendants. Consequently, this Court should allow Dillon Gage to assert its counterclaims and third-party claims in this proceeding, and deny the Receiver's Motion to Strike and Motion to Dismiss.

---

[23] Stanford Financial Group Receivership Claims Procedure, http://www.stanfordfinancialreceivership.com/documents/Notifying_The_Receiver_of_Claims.pdf (last visited March 23, 2011).

[24] *See id*. ("In addition, based on what the Receiver has learned so far, it appears that the total assets of the Estate are likely to be only a fraction of the amount needed to satisfy the total anticipated claims against the Estate. Therefore, the Receiver cannot predict whether or when you will receive anything in response to your claim.").

Alternatively, this Court should abate this action until such time as the Receiver is prepared to resolve the entire dispute.

WHEREFORE, PREMISES CONSIDERED, Dillon Gage Incorporated of Dallas prays that the Court deny the Receiver's Motion to Strike and to Dismiss Third-Party Claims and Counterclaims and grant such other and further relief to which it may be justly entitled.

Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

By:   /s/ Kenneth C. Johnston
**Kenneth C. Johnston**
State Bar No. 00792608
kjohnston@krcl.com
**Robert N. LeMay**
State Bar No. 12188750
rlemay@krcl.com
**Joseph A. Hummel**
State Bar No. 24056879
jhummel@krcl.com

1601 Elm Street
3700 Thanksgiving Tower
Dallas, Texas  75201
Telephone:    (214) 777-4200
Facsimile:    (214) 777-4299

**ATTORNEYS FOR DEFENDANT /
COUNTER PLAINTIFF DILLON GAGE
INCORPORATED OF DALLAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U. S. mail on all counsel of record entitled to receive service.

/s/ Kenneth C. Johnston
Kenneth C. Johnston

RESPONSE TO THE RECEIVER'S MOTION TO STRIKE AND TO DISMISS                                                      Page 11
1265322 v3 (19400.00064.000)