## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:10-CV-1973-N-BG |
| DILLON GAGE INC. OF DALLAS and DILLON GAGE INC., | § § § | |
| Defendants | § § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO RECEIVER'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT AND REPLY IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT

**LEVINGER PC**

Jeffrey S. Levinger
State Bar No. 12258300
jlevinger@levingerpc.com

1445 Ross Avenue, Suite 2500
Dallas, TX 75202-2711
(214) 855-6817
(214) 855-6808 (Facsimile)

**GRUBER HURST ELROD JOHANSEN HAIL SHANK LLP**

By: */s/ Orrin L. Harrison III*
Orrin L. Harrison III
  State Bar No. 09130700
  oharrison@ghetrial.com
Michael J. Lang
  State Bar No. 24036944
  mlang@ghetrial.com
Laura M. Fontaine
  State Bar No. 24065239
  lfontaine@ghetrial.com
Priya A. Bhaskar
  State Bar No. 84082690
  pbhaskar@ghetrial.com

1445 Ross Avenue, Suite 2500
Dallas, TX 75202-2711
(214) 855-6800
(214) 855-6808 (Facsimile)

**ATTORNEYS FOR DEFENDANTS DILLON GAGE INC. OF DALLAS AND DILLON GAGE INC.**

## TABLE OF CONTENTS

Index of Authorities ....................................................................................................... ii

Preliminary Statement .....................................................................................................1

Argument .........................................................................................................................3

A.   Based on the Record, a Reasonable Jury Could Find that the Transfers from SCB
     to Dillon Gage were not Fraudulent Transfers................................................................3

     1.   The Evidence Supported the Jury's Finding that SCB Did Not Make the
          Transfers with Actual Fraudulent Intent. ..............................................................4

          a.   The Receiver Did Not Prove Insolvency Under TUFTA. .........................5

          b.   The Receiver Did Not Prove Any Other Badges of Fraud. ......................8

     2.   The Receiver Did Not Submit a Theory of Direct Proof of Fraudulent
          Intent at Trial, and Even if the Receiver Had, a Reasonable Jury Could
          Find that the Evidence Still Did Not Establish Fraudulent Intent. .........................9

     3.   The Court Properly Instructed the Jury that Intent to Prefer Alone Does
          not Indicate Fraudulent Intent...........................................................................13

B.   There is Sufficient Evidence from Which a Reasonable Jury Could Find that
     Dillon Gage Accepted the Transfers from SCB in Good Faith. .....................................14

C.   The Court Should Grant Dillon Gage's Motion for Final Judgment...............................16

Conclusion ....................................................................................................................16

Certificate of Service.......................................................................................................18

<u>**INDEX OF AUTHORITIES**</u>

**Cases**

*Adams v. Williams*,
　248 S.W. 673 (Tex. 1923) ...................................................................................13

*Alexander v. Holden Business Forms, Inc.*,
　No. 4:08-CV-00614-Y, 2009 WL 2176582 (N.D. Tex. July 20, 2009) (Means, J.) ...............13

*Amjad Munim, M.D. v. Azar*,
　648 So.2d 145 (Fla. 4th D.C.A. 1994) ...................................................................8

*Baisden v. I'm Ready Productions, Inc.*,
　693 F.3d 491 (5th Cir. 2012) ...............................................................................3

*Basley v. Adoni Holdings, LLC*,
　373 S.W.3d 577 (Tex. App.—Texarkana 2012, no pet.) ...........................................6

*Doyle v. Kontemporary Builders, Inc.*,
　No. 05–10–01510–CV, 2012 WL 1623031 (Tex. App.—Dallas May 8, 2012, no pet. h.) ........4

*Ellis v. Weasler Eng'g Inc.*,
　258 F.3d 326 (5th Cir. 2001) ...............................................................................3

*Equity Inv. Partners, L.P. v. Lenz*,
　No. 08-60630-CIV, 2010 WL 3008831, at *14 (S.D. Fla. July 28, 2010) ................................8

*GE Capital Commercial, Inc. v. Worthington Nat'l Bank*,
　754 F.3d 297 (5th Cir. 2014) ...............................................................................14

*Hahn v. Love*,
　321 S.W.3d, 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ...................................14

*In re Iridium Operating LLC*,
　373 B.R. 283 (Bankr. S.D.N.Y. 2007) ...................................................................6

*In re Mussa*,
　215 B.R. 158 (Bankr. N.D. Ill. 1997) ...................................................................8

*In re Ramirez*,
　No. 09-70051, 2011 WL 30973 (Bankr. S.D. Tex. Jan. 5, 2011) ...............................................4

*In re Seven Seas Petrol., Inc.*,
　522 F.3d 575 (5th Cir. 2008) ...............................................................................9

*In re SMTC Mfg. of Tex.*,
　421 B.R. 251, 300 (Bankr. W.D. Tex. Sept. 11, 2009) ........................................................4, 5

*In re Stanley*,
384 B.R. 788 (Bankr. S.D. Ohio 2008) ...................................................................6

*In re Unglaub*,
332 B.R. 303 (Bankr. N.D. Ill. 2005) ......................................................................6

*Isbell Records, Inc. v. DM Records, Inc.*,
774 F.3d 859 (5th Cir. 2014) .............................................................................3, 10

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
712 F.3d 185 (5th Cir. 2013) ..................................................................................9

*Lambert v. Genesee Hosp.*,
10 F.3 46 (2d Cir. 1993) .......................................................................................10

*Owen Steel Co., Inc. v. Marsh USA, Inc.*,
520 F.3d 432 (5th Cir. 2008) ..................................................................................3

*Pre-Wart Art, Inc. v. Stanford Coins and Bullion, Inc.*,
No. 15-10033 (5th Cir. July 27, 2015) ....................................................................9

*Quinn v. Dupree*,
303 S.W.2d 769 (Tex. 1957) .................................................................................13

*Roland v. U.S.*,
838 F.2d 1400 (5th Cir. 1988) ................................................................................5

*Ross v. Rhodes Furniture, Inc.*,
146 F.3d 1286 (11th Cir. 1998) ............................................................................10

*Sterquell v. Scott*,
140 S.W.3d 453 (Tex. App.—Amarillo 2004, no pet.) ............................................5

*Sulmeyer v. Coca-Cola Co.*,
515 F.2d 835, (5th Cir. 1975) ...............................................................................10

*Walker v. Anderson*,
232 S.W.3d 899 (Tex. App.—Dallas 2007, no pet.) ............................................4, 5

*Williams v. Houston Plants & Garden World, Inc.*,
508 B.R. 19 (Bankr. S.D. Tex. 2014) ......................................................................6

## Statutes

TEX. BUS. & COM. CODE §24.005(b)(1)–(11) ...........................................................5, 8

TEX. BUS. & COMM. CODE § 24.003(b) ........................................................................5

TEX. BUS. & COMM. CODE § 24.005(a)(1) .....................................................................4

Dillon Gage Inc. of Dallas and Dillon Gage Inc. (collectively, "Dillon Gage" or "Defendants")[1] respectfully submit this *Response in Opposition to Receiver's Motion for Judgment as Matter of Law and Brief in Support* ("Response") as follows:

## PRELIMINARY STATEMENT

The Court should deny the Receiver's Motion for Judgment as a Matter of Law (Dkt. 232) (the "Motion"), just as it previously denied the Receiver's Motion for Summary Judgment and his Motion for Judgment as a Matter of Law at trial.  The Receiver alleged six transfers that Dillon Gage received from Stanford Coin & Bullion, Inc. ("SCB") in January and February 2009 were fraudulent transfers.  Following a five-day trial, a panel of seven jurors unanimously found that they were not fraudulent.  The Receiver now asks that the Court abrogate the jury's sound verdict.

In making this request, the Receiver impermissibly ignores all evidence that does not support his claims, relies on disputed evidence, resolves all evidentiary conflicts in his own favor, and presents legal issues that were never raised prior to the verdict.  When viewed in full, however, the evidence presented at trial was more than sufficient for a reasonable jury to find in favor of Dillon Gage, and indeed, would have supported a motion for judgment as a matter of law for Dillon Gage, had the verdict been rendered in Receiver's favor.

First, the Receiver failed to prove by a preponderance of the evidence that any badges of fraud existed as to any of the transfers at issue.  At trial, of the eleven badges, the Receiver alleged only two: (1) that SCB was insolvent at the time of the transfers; and (2) that the transfers

---

[1] The Receiver non-suited his claims against defendant Dillon Gage Inc. prior to submitting the case to the jury, but has not amended the caption of the Motion nor does he make clear whether he seeks judgment against Dillon Gage Inc.  Because he did not submit any claims against Dillon Gage Inc. to the jury, his Motion is improper as against Dillon Gage Inc.  Nonetheless, this response is filed on behalf of both Dillon Gage Inc. and Dillon Gage Inc. of Dallas out of an abundance of caution.

occurred before or after SCB incurred a substantial debt.  The Receiver, however, completely failed to establish even these two badges, which would have been insufficient on their own to sustain a plaintiff's verdict.  The Receiver did not present any evidence in support of any other badges of fraud.

Second, the Receiver otherwise failed to prove that SCB made any one the transfers with actual fraudulent intent.  The Receiver now argues that there was "direct" evidence establishing that SCB intended to defraud its customer Pre-War Art, Inc. d/b/a Gagosian Gallery ("Gallery") when it made one of the six transfers on February 2, 2009.  The Receiver's newfound assertion is based on a theory that SCB made fraudulent representations to the Gallery to effectuate that transfer.  The Receiver, however, lacks standing to assert what would be only the Gallery's claim for fraudulent transfer against Dillon Gage and would have drawn a motion to dismiss for lack of subject matter jurisdiction on the issue *had* he raised it in his pleadings, the jury instructions, his Rule 50(a) motion, or at any other time in this litigation.  He cannot raise it now.  Regardless, it has no merit.

Third, contrary to the Receiver's argument, the Court properly instructed the jury that "[a] debtor's mere intention to prefer one creditor over another does not indicate fraudulent intent, provided that the creditor does not receive more than is reasonably necessary to pay its debts."  Not only is this a correct statement of law (unlike the Receiver's statement to the jurors that "a fraudulent transfer is when a company . . . picks and chooses which creditors to pay…"), it does not change the Receiver's failure to meet his burden to prove fraudulent intent.

Finally, because the Receiver did not meet his burden to prove that the transfers from SCB to Dillon Gage were fraudulent transfers, the jury did not reach Dillon Gage's affirmative defense of good faith.  Nonetheless, even if it had, there was ample evidence from which a

reasonable jury could have found that Dillon Gage did not have knowledge of the purported avoidability of the transfers when it accepted them.  The Receiver is not entitled to judgment as a matter of law, and final judgment should be entered in accordance with the jury's verdict.

### <u>ARGUMENT</u>

"A district court must deny a motion for judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."  *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) (internal quotations and citations omitted).  In evaluating a Rule 50 motion, a court must consider all of the evidence, "draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence."  *Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (quoting *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001)).  A Rule 50(b) motion is no more than a renewal of the movant's Rule 50(a) motion for judgment as a matter of law, and cannot assert any ground that was not included in the original motion.  *Isbell Records, Inc. v. DM Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014).

**A.** **Based on the Record, a Reasonable Jury Could Find that the Transfers from SCB to Dillon Gage were not Fraudulent Transfers.**

In an attempt to overcome his failure to meet his burden of proof at trial, the Receiver now asks the Court to disregard a verdict that was amply supported by the evidence.  The Receiver argues that he is entitled to judgment as a matter of law on his actual fraudulent transfer claim because (1) SCB was presumably insolvent under TUFTA; (2) SCB incurred a "substantial debt" to the Gallery at the time of the transfers; (3) SCB's purported fraudulent intent as to the February 2, 2009 transfer was established by direct evidence that SCB committed "common law fraud" or "fraud by nondisclosure" on the Gallery in effectuating that transfer; and (4) no rational

jury could have found that the transfers were a "mere 'preference,'" and thus the Court's jury instruction on intent to prefer was somehow improper.  The record, however, establishes that (1) the Receiver failed to identify a single creditor or past due debts owed to any creditor except for Dillon Gage (from whom the Receiver sought to claw back SCB's payments); (2) SCB had every intent to fulfill the Gallery's order, which was not due to be shipped until March 4, 2009; (3) before filing his post-verdict Motion, the Receiver never even *alleged*—much less presented any evidence at trial—that SCB committed actual fraud against the Gallery in relation to the February 2, 2009 transfer, and would have lacked standing to do so; (4) the jury instruction on intent to prefer was a clear and correct statement of law that was necessary to correct the Receivers' misleading testimony to the jury.  There is thus no basis for the judgment the Receiver seeks.

1. **The Evidence Supported the Jury's Finding that SCB Did Not Make the Transfers with Actual Fraudulent Intent.**

To avoid a transfer under § 24.005(a)(1) of TUFTA, a creditor must prove by a preponderance of the evidence as to that specific transfer that the debtor made the transfer with actual fraudulent intent to hinder, delay, or defraud its creditors.  TEX. BUS. & COMM. CODE § 24.005(a)(1); *see also Doyle v. Kontemporary Builders, Inc.*, No. 05–10–01510–CV, 2012 WL 1623031, at *3 (Tex. App.—Dallas May 8, 2012, no pet. h.) (citing *Walker v. Anderson*, 232 S.W.3d 899, 913 (Tex. App.—Dallas 2007, no pet.).  Because it is not susceptible to direct proof, actual fraudulent intent may be presumed given the presence of a number of the eleven badges of fraud listed under § 24.005(b) of TUFTA.  *In re SMTC Mfg. of Tex.*, 421 B.R. 251, 300 (Bankr. W.D. Tex. Sept. 11, 2009); *In re Ramirez*, No. 09-70051, 2011 WL 30973, at *4 (Bankr. S.D. Tex. Jan. 5, 2011).

The badges of fraud include whether: (1) the transfer was to an insider; (2) the debtor retained possession or control of property transferred after the transfer; (3) the transfer was concealed; (4) the debtor was sued or threatened with suit before the transfer was made; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred; (10) the transfer occurred shortly before or after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.  TEX. BUS. & COM. CODE §24.005(b)(1)–(11).

"As a matter of law, a finding of fraudulent intent cannot be properly inferred from the existence of just one 'badge of fraud.'"  *In re SMTC*, 421 B.R. at 299–300.  Rather, for an inference of fraud to be formed as to a transfer, a creditor must prove a concurrence of *several* badges of fraud—ordinarily a minimum of four to five—as to that specific transfer.  *See id.*; *Roland v. U.S.*, 838 F.2d 1400, 1403 (5th Cir. 1988); *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App. — Dallas 2007, no pet.).  Fraudulent intent "must be affirmatively shown and will not be presumed."  *Sterquell v. Scott*, 140 S.W.3d 453, 460 (Tex. App.—Amarillo 2004, no pet.).  Here, the Receiver alleged only two badges of fraud—and failed to establish either one.

### a.    The Receiver Did Not Prove Insolvency Under TUFTA.

Under TUFTA, "[a] debtor who is *generally not* paying the debtor's debts as they *become due* is presumed to be insolvent."  TEX. BUS. & COMM. CODE § 24.003(b) (emphasis added).[2]  A determination of whether this presumption applies requires consideration of "the number and

---

[2] Although balance sheet insolvency under TEX. BUS. & COMM. CODE § 24.003(a) was submitted to the jury, the Receiver does not rely on it in his Motion.

amount of the unpaid debts in relation to the size of the debtor's operation; the age and number of unpaid debts; the total amount of indebtedness; and the number of unpaid creditors." *Williams v. Houston Plants & Garden World, Inc.*, 508 B.R. 19, 30–31 (Bankr. S.D. Tex. 2014). It should also account for a debtor's payment practices before the time of the alleged nonpayment and the general payment practices of the debtor's industry. *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 584 (Tex. App.—Texarkana 2012, no pet.). Failure to pay a single creditor alone does not mean that the debtor failed to "generally" pay its debts. *See, e.g., In re Stanley*, 384 B.R. 788, 808 (Bankr. S.D. Ohio 2008); *In re Iridium Operating LLC*, 373 B.R. 283, 342–43 (Bankr. S.D.N.Y. 2007); *In re Unglaub*, 332 B.R. 303, 318 (Bankr. N.D. Ill. 2005). Solvency is instead viewed holistically.

The Receiver insists that SCB "had millions of dollars in unpaid bills to other creditors" —a statement that the Receiver also made to the jury in his testimony, but that was never corroborated by any evidence at any point during the trial. *See* Rec.'s Mot. 15; App. 207, 308–10. The fact that SCB had debt is irrelevant. The question is whether SCB was generally not paying its debts as they came due. The evidence showed that the Receiver could not identify a *single* past-due debt owed to a *single* creditor, except for Dillon Gage (who eventually did get paid and from whom the Receiver sought to claw back payments). *See, e.g.*, App. 699, 703–05. Even the Gallery was not to receive its order until March 4, after the Receiver shut SCB down.

Nor could the Receiver's financial expert, Karyl Van Tassel ("Van Tassel"), support the Receiver's unsupported statement. Van Tassel first testified that her expert opinion regarded only SCB's *ability* to pay debts as they became due. App. 663, 696. She later testified that she could not identify any specific past-due debts of SCB, as would be required under the relevant test of

TUFTA.  Instead, she opined—contrary to the law and the facts—that "all [debts] are due at any given time."  App. 700.  She also testified:

> Q. In opining on whether SCB was generally not paying the debtor's debts as they become due, did you look at the total number of past due debts?
>
> A. Well, as I showed you in the general ledger, there are all of them in there, and I looked at the general ledger that reflect those amounts.
>
> Q. But you don't know which of those were due and which of those were not due.
>
> A. *Well, they were all due. They're liabilities so they are due and payable*.
>
> Q. There's a difference between a liability being due and a liability in general. Right?
>
> A. *No. All liabilities are due. I think there might be a difference maybe if they're past due.*

App. 699.  And when asked whether she had identified *which* of the bills due <u>*just to Dillon Gage*</u> in January and February of 2009 were actually *over*due, Van Tassel testified: "No, I didn't." App. 697–98.  She continued:  "I did not look at all of the individual invoices, no.  Would I be able to do that, yes, I could.  […]  I have not looked down to individual invoices because of the testimony that reflects clearly they felt they were owed at least the amounts that we're talking about."  App. 698.  *See also* App. 699 (agreeing that, at deposition just six weeks prior, she had not identified any other bills, except those with Dillon Gage, that SCB was not paying in January and February as they became due) (Van Tassel Test.).  Van Tassel thus admitted that she had not considered the relevant factors under Texas law that render nonpayment of debts "general."

Moreover, the only two employees who testified at trial — Joseph Frisard and Scott Terry — affirmatively testified that SCB was generally paying its debts as they came due.  App. 354–55, 370, 373, 602, 603–04, 634–35.  Terry Hanlon and Ira Fritz also testified that they had not heard that SCB had failed to pay any other debt, and that if SCB had failed to pay industry debts, they would have heard about it.  *See, e.g.*, App. 807, 975–76.  Dillon Gage's expert

witness Michael Fuljenz testified that word of non-payment of debts would spread very quickly in the tight-knit coin and bullion industry, and that he had not heard of any non-payment by SCB prior to the receivership. App. 1040–47. The jury was entitled to credit their testimony and reject the Receiver's claim of insolvency.

### b.    The Receiver Did Not Prove Any Other Badges of Fraud.

One indicia of fraudulent intent may be present when a debtor makes a transfer shortly before or shortly after incurring a substantial debt. TEX. BUS. & COM. CODE §24.005(b)(10). This badge of fraud generally occurs when a debtor either anticipates or incurs a large liability and makes a transfer *in order to avoid payment of that liability*. *See, e.g., Equity Inv. Partners, L.P. v. Lenz*, No. 08-60630-CIV, 2010 WL 3008831, at *14 (S.D. Fla. July 28, 2010) (transfer made to avoid tax liability); *In re Mussa*, 215 B.R. 158, 169–70 (Bankr. N.D. Ill. 1997) (transfer made to avoid payment of medical bills); *Amjad Munim, M.D. v. Azar*, 648 So.2d 145, 152 (Fla. 4th D.C.A. 1994) (transfer made to avoid payment of judgment).

Here, the evidence showed that SCB did not make any of the six transfers to Dillon Gage with the intent to avoid fulfillment of the Gallery's order, but just the opposite. Payments made to SCB's biggest gold supplier made it more likely, not less likely, that the Gallery's order, as well as the orders of many other SCB customers, would be fulfilled. As described in greater detail below, the evidence was uncontroverted that SCB would have fulfilled the Gallery's order on or before March 4, 2009—the date it was due. *See, e.g.*, App. 607, 610–11, 789–99, 798, 802–04, 807, 927, 990–91; *see also infra* § A.2. SCB had additional funds that it had planned to pay Dillon Gage the week the receivership was instituted, and Dillon Gage had ordered 100 gold bars accordingly. *See id.*; App. 210, 608–09, 645. Had the Receiver not intervened and stopped the transactions, SCB would have followed through on its intent—to fulfill the Gallery's order—

and would not have incurred any "substantial debt" at all.  And in the meantime, Dillon Gage released its hold on SCB's orders and shipped $1.9 million in product to other SCB customers.

> **2.  The Receiver Did Not Submit a Theory of Direct Proof of Fraudulent Intent at Trial, and Even if the Receiver Had, a Reasonable Jury Could Find that the Evidence Still Did Not Establish Fraudulent Intent.**

In his Motion, the Receiver, for the first time, introduces his theory that SCB's fraudulent intent was established by an alleged fraudulent misrepresentation or omission to the Gallery, arguing "SCB's actions meet [sic] all the common law elements of fraud" and "the definition of fraud by nondisclosure."   As an initial matter, under Fifth Circuit precedent from this Receivership, the Receiver may bring only fraudulent transfer claims that belong to Receivership entities, not the Receivership's creditors.[3]  Thus, the Receiver only owned a claim that SCB made transfers to Dillon Gage in order to defraud the estate of SCB, *e.g.*, to diminish the SCB estate.  He did not own a claim that SCB intended to defraud the Gallery specifically.  The Gallery owned that claim, and as it has stated repeatedly, it does not believe that SCB intended to defraud it by transferring money to Dillon Gage.[4]  There was no evidence that SCB intended to defraud its estate by transferring money to Dillon Gage — rather, all testimony was consistent that it expected to receive dollar-for-dollar satisfaction of antecedent debt or equivalent amounts of precious metals in exchange for those transfers.

---

[3] A "federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also In re Seven Seas Petrol., Inc.*, 522 F.3d 575, 584–87 (5th Cir. 2008) (finding that fraud claims belonged to creditors).

[4] The Court may take judicial notice of the Gallery's position on appeal in *Pre-War Art, Inc. v. Stanford Coins & Bullion, Inc.* Reply Brief for Plaintiff-Appellant pp. 8 n. 6, 21 n.16, *Pre-Wart Art, Inc. v. Stanford Coins and Bullion, Inc.*, No. 15-10033 (5th Cir. July 27, 2015) [Doc. 00513131040] ("The Gallery has obviously never characterized that bona fide payment (which obligated Dillon Gage to deliver the gold) as a fraudulent conveyance or otherwise voidable.").

Additionally, during the entirety of this case, not once did the Receiver plead or allege this theory of common-law fraud on the Gallery.  Nor did it request a jury instruction on this theory, object to the Court's charge for a failure to instruct on this theory, or mention it in his Rule 50(a) motion before the close of evidence.  And the Receiver did not try this case to the jury based on an allegation of fraudulent misrepresentation or omission.  He instead tried this case as "really more kind of a garden variety creditor strong-arming a debtor, while it knows the debtor is struggling, fraudulent transfer case, the kinds of things they probably do in a bankruptcy court on a monthly basis."  App. 7.

Because the Receiver failed to assert before the verdict that SCB's fraudulent intent could be established by misrepresentation or omission, he is not entitled to raise it now in support of his Motion.  *See Isbell Records*, 774 F.3d at 868–69 (finding that movant was prohibited from asserting new ground in Rule 50(b) motion acts in light of the Rule's purpose of ensuring notice to the other party of defects in proof and avoiding ambush); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1290 (11th Cir. 1998) (vacating lower court's decision to consider new ground asserted in Rule 50(b) motion because "we must act in an abundance of caution towards preserving the sanctity of a jury's verdict"); *Lambert v. Genesee Hosp.*, 10 F.3 46, 54 (2d Cir. 1993) ("[A] careful reading of the Advisory Committee Note [to Rule 50] indicates that the Committee was particularly interested in protecting the nonmovant's right to be informed, prior to submission of the case to the jury, of the alleged deficiencies in the case.") (internal quotations and citations omitted); *Sulmeyer v. Coca-Cola Co.*, 515 F.2d 835, 846 (5th Cir. 1975) (finding movant could not assert alternative theory of liability post-verdict when movant did not propose jury instruction on theory, object to lack of such instruction, assert theory at trial, or mention theory in pre-verdict motion).

But even if the Receiver could now assert fraudulent misrepresentation or omission as a ground for judgment as a matter of law on his fraudulent transfer claim, the evidence supports a finding that SCB did not make the February 2, 2009 transfer with the intent to defraud the Gallery by misrepresentation or omission.  SCB sold the Gallery 101 gold bars; agreed that the gold bars would be delivered by March 4, 2009; paid Dillon Gage an additional $853,131.36 after February 2; had additional funds ready to be sent to Dillon Gage well before March 4; and had every intention of ensuring delivery of the gold bars on or before that date.  App. 210, 591, 607, 610–11, 789–99, 798, 802–04, 807, 927, 990–91, 1031–33; *see also* App. 210, 364, 385–86, 608–09, 645 (indicating that SCB had at least $1.2 million in cash and $300,000–$400,000 in uncashed checks as of February 17, 2009 and was ready pay Dillon Gage $1.5 million on February 19, 2009).  *See also* App. 577 ("The reason the gold bars had not been shipped is they were not due to be shipped.") (Scott Terry Test.).  As SCB's chief financial officer, Scott Terry, further testified:

Q. Now, did you intend to defraud PreWar Art out of those gold bars?

A. No.

Q. Did in point of fact, when you sent the money, you ordered the gold bars from Dillon Gage?

A. That's correct.

Q. And Dillon Gage confirmed at the same time that they had bought those gold bars.

A. I believe that's true.

Q. So in your mind this was a business deal that was set and ready to go.

A. Yes.

Q. And you just had to go between February 2nd and March 4th to clear up some issues.

A. Yes.

Q. Was there any other creditor, if it wasn't Pre-War Art, that you were trying to defraud?

A. No.

Q. Were you diverting customer funds?

A. No.

App. 610.  *See also* App. 591.

Moreover, Dillon Gage had ordered the 100 gold bars, and there was no indication that the bars would not be shipped as scheduled:

Q. And when the $3 million comes in, did Dillon Gage take efforts to obtain the 100 gold bars?

A. Yes.

Q. Did Dillon Gage actually obtain the 100 gold bars?

A. Yes.

Q. Did Dillon Gage have the 100 gold bars ready to ship by the time they needed to ship on March 3rd?

A. We would have been prepared to ship the gold bars to get them to – again, I think it was New York but they say Beverly Hills, on the 4th of March.

Q. But you had them.

A. We had them.

App. 927; *see also* App. 789–99.

The Receiver presented **no** evidence of any *specific "false representations"* that SCB made *to the Gallery* about SCB's payment arrangements with Dillon Gage.  Despite the Receiver's recitation of hearsay and witness opinions as to what the Gallery would have done under different, hypothetical circumstances, the evidence shows that SCB represented to the Gallery *at most* that the Gallery would receive its order on the agreed-upon date, and that SCB

was prepared to fulfill that order by that date.  The undisputed evidence further demonstrates that SCB would have done so, but for the intervention of the receivership.

> **3.     The Court Properly Instructed the Jury that Intent to Prefer Alone Does not Indicate Fraudulent Intent.**

On the second day of trial, the Receiver, after a recitation of his many qualifications as an attorney and a court-appointed officer of the estate, testified:

> *"Basically a fraudulent transfer is when a company or a business doesn't have enough money to pay all its creditors, so it picks and chooses which creditors to pay to keep itself giving an air of legitimacy and staying in business.  By picking certain creditors over other creditors, other creditors are being harmed.  The fact they make payments to selective creditors in this case is a fraudulent transfer."*

App. 254.

But "[u]nder Texas law the mere fact that one creditor receives payments while other creditors go unpaid does not indicate fraudulent intent," and an intent to prefer alone will not give rise to avoidance where no more is transferred than reasonably necessary to pay a debt. *Alexander v. Holden Business Forms, Inc.*, No. 4:08-CV-00614-Y, 2009 WL 2176582, at *7 (N.D. Tex. July 20, 2009) (Means, J.) (citing *Quinn v. Dupree*, 303 S.W.2d 769, 774 (Tex. 1957) and *Adams v. Williams*, 248 S.W. 673, 676 (Tex. 1923)).  Despite this settled law, the Receiver now takes the position that it was the Court, not him, who contradicted Fifth Circuit law by instructing the jury that "[a] debtor's mere intention to prefer one creditor over another does not indicate fraudulent intent, provided that the creditor does not receive more than is reasonably necessary to pay its debts." *See* Rec.'s Mot. 13. The Receiver further purports, again erroneously, that the Court's instruction "suggest[ed] that a debtor who prefers one creditor over another can never be found to have fraudulent intent." *Id.* The Court, of course, did not so instruct the jury.

Not only was the Court's instruction legally correct, it was unambiguous: preference alone is not a fraud. The Receiver had the burden to show fraudulent intent. After instructing the jury that preference alone is not enough, the Court properly provided a list of eleven statutory indicia that *would* support a finding of fraudulent intent, each of which the jury was instructed to consider. *See* Court's Charge to the Jury 8–10. The Court properly instructed the jury on fraudulent intent—and, based on the evidence, the jury properly found that the Receiver had failed to show any fraudulent intent.

**B.    There is Sufficient Evidence from Which a Reasonable Jury Could Find that Dillon Gage Accepted the Transfers from SCB in Good Faith.**

Even if the Receiver had obtained favorable jury findings on Question No. 1, he would not be able to establish his entitlement to judgment on Dillon Gage's affirmative defense of good faith, which the jury did not reach. To establish that it accepted a transfer in good faith, a transferee must lack actual and constructive knowledge of the fraudulent nature of the transfer. *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 312–13 (5th Cir. 2014); *Hahn v. Love*, 321 S.W.3d, 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The Receiver argues that if the jury had reached the question, "no rational jury" could find in favor of Dillon Gage on its affirmative defense of good faith because Dillon Gage "extracted" payments from SCB when it knew or should have known that SCB was purportedly insolvent, and because Dillon Gage was privy to SCB's alleged "plan" to "divert" customer funds. The Receiver's arguments do not negate good faith on the part of Dillon Gage.

First, for the reasons stated above, the Receiver failed to prove that SCB was solvent. Second, the evidence at trial unquestionably did not establish that Dillon Gage used "inside knowledge" as "leverage" to "extract" payment from SCB. Rather, Dillon Gage treated SCB as it would any other retailer with whom it operated on an open account—*i.e.*, it contemplated

suspending shipments when a credit line had reached its limit and immediately resumed them when the balance was reduced. *See* App. 386, 773, 977–78, 984. This was no hardline tactic: the evidence showed that at the time of the transfers, SCB itself did not believe that shipments from Dillon Gage had been or would be suspended. *See*, *e.g.*, App. 355, 386, 582–84. Dillon Gage even continued accruing goods (including 100 bars) to help SCB continue fulfilling customer orders—an action inconsistent with the aggressive creditor that the Receiver attempts to portray. *See* App. 386, 790, 792–93, 795, 798, 807, 926, 990–91.

In contrast, the evidence did establish that Dillon Gage had no actual or constructive knowledge of SCB's purported "dire financial situation" at the time of the transfers. First, there was no "dire financial situation": SCB had no other identifiable creditors to whom it owed past-due outstanding debts at the time it made the transfers to Dillon Gage—much less any creditors that Dillon Gage could have known about. *See* App. 370, 800, 985. SCB never indicated to Dillon Gage that it would not pay or be able to pay other debts as a result of the transfers, or that it was experiencing more than a temporary cash flow problem. App. 373, 774, 777, 800, 804, 925–26, 932, 973–74. Because SCB was simply a habitual "slow payer," but one that eventually would pay, Dillon Gage "always believed they would pay. I think they would be slow." App. 807. Dillon Gage had no "inside" knowledge to inform it of any different information, and did not have access to SCB's financials. App. 370, 798, 802–04.

The evidence also established that Dillon Gage had no actual or constructive knowledge of the purported fraudulent nature of the transfers. SCB and Dillon Gage had done business on an open account for years, and SCB, the habitual slow payer, appeared to be catching up on that account. App. 772, 774, 806–07, 982. When SCB made payments toward the account, Dillon Gage applied those payments to the oldest debts first—not because of a grand plan to divert

funds, but to enable the parties to continue providing goods to SCB's customers.  App. 606, 611, 767–70, 775–76, 788, 795, 951; *see also* App. 1053.  Indeed, Dillon Gage was drop-shipping to SCB's customers, knew that SCB had business, and believed that SCB would continue to have business.  *See* App. 777, 783, 798, 803–04, 925–26, 928, 951, 1033.  Dillon Gage in fact ordered goods for and shipped goods to SCB up until the receivership was instituted.  *See* App. 790, 792–93, 926.  As to the Gallery's order, Dillon Gage had ordered *and* placed hedges against 100 gold bars, and was prepared to ship the gold bars on March 4, 2009, just as the Gallery had requested.  App. 927, 990–91, 1033.  Dillon Gage exhibited no belief that SCB did not plan to follow through on the order, or that SCB had concocted some scheme to divert money away from other creditors and render itself insolvent.  *See*, *e.g.*, App. 798, 927–28, 932, 990–91, 1033.  Ample evidence would have supported a finding of good faith on the part of Dillon Gage.

**C.      The Court Should Grant Dillon Gage's Motion for Final Judgment.**

The Receiver has presented no legitimate grounds for the Court to deny Dillon Gage's Motion for Final Judgment.  Because the Receiver is not entitled to judgment as a matter of law on his actual fraudulent transfer claim, the Court should render a take-nothing judgment in favor of Dillon Gage in accordance with the jury's verdict.

CONCLUSION

For these reasons, the Court should deny the Receiver's Motion for Judgment as a Matter of Law and render final judgment in favor of Dillon Gage in accordance with the jury's verdict.

Respectfully submitted,

**GRUBER HURST ELROD JOHANSEN HAIL SHANK LLP**

By: */s/ Orrin L. Harrison III* _____
**Orrin L. Harrison III**
*State Bar No. 09130700*
oharrison@ghetrial.com
**Michael J. Lang**
*State Bar No. 24036944*
mlang@ghetrial.com
**Laura M. Fontaine**
*State Bar No. 24065239*
lfontaine@ghetrial.com
**Priya A. Bhaskar**
*State Bar No. 24082690*
pbhaskar@ghetrial.com

1445 Ross Avenue, Suite 2500
Dallas, TX 75202-2711
(214) 855-6800
(214) 855-6808 (Facsimile)

*AND*

**LEVINGER PC**

**Jeffrey S. Levinger**
*State Bar No. 12258300*
jlevinger@levingerpc.com

1445 Ross Avenue, Suite 2500
Dallas, TX 75202-2711
(214) 855-6817
(214) 855-6808 (Facsimile)

**ATTORNEYS FOR DEFENDANTS DILLON GAGE INC. OF DALLAS AND DILLON GAGE INC.**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served on the following counsel on August 28, 2015, in accordance with the Federal Rules of Civil Procedure.

Kevin M. Sadler
David T. Arlington
Robert I. Howell
Brendan A. Day
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701-4039
(T) 512/322-2500
(F) 512/322-2501
kevin.sadler@bakerbotts.com
david.arlington@bakerbotts.com
robert.howell@bakerbotts.com
brendan.day@bakerbotts.com

Timothy S. Durst
Christopher Norfleet
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
(T) 214/953-6500
(F) 214/661-6503
tim.durst@bakerbotts.com
christopher.norfleet@bakerbotts.com


*/s/ Priya A. Bhaskar*
Priya A. Bhaskar