IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 03:10-CV-1973-N-BG |
| DILLON GAGE INC. OF DALLAS and DILLON GAGE INC. | § § § § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF RECEIVER'S MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Dillon Gage's Response cannot overcome the overwhelming direct evidence that SCB defrauded the Gallery, one of its many creditors, when SCB transferred $3,002,639.10 to Dillon Gage on February 2, 2009. SCB lied to the Gallery regarding the use of those funds and diverted the Gallery's payment to pay off other debts. The Gallery relied on SCB's misrepresentations when it sent SCB the money. This is textbook fraud and, therefore, dispositive of actual fraudulent intent under TUFTA. Dillon Gage had actual knowledge of SCB's plan to fraudulently divert the Gallery's money. These undisputed facts are not defeated by Dillon Gage's speculative assertion that SCB might have had some other unspecified — and, as the evidence showed, ultimately impossible — way to pay for the Gallery's gold bars in time for shipment. SCB's fraud was complete once it misled the Gallery and used money from that pre-paid order to cover SCB's old debts. As Terry Hanlon correctly observed, SCB was simply "robbing Peter to pay Paul," which is fraud, plain and simple. Trial Tr. 4 at 136 (R. App. 1016).[1]

---

[1] Citations to "R. App." refer to the Appendix in Support of Defendants' Response (Doc. 234-1–234-5).

- 1 -

The direct evidence of SCB's intent to defraud, combined with circumstantial evidence of other badges of fraud, also establish as a matter of law SCB's actual intent to defraud as to the other five transfers that Dillon Gage received from SCB (totaling $2,117,516.57). Indeed, Dillon Gage received those other five transfers after it knew of SCB's fraudulent plan. As a result, there is insufficient evidence to support the jury's verdict, and the Receiver is entitled to judgment as a matter of law on the fraudulent nature of the six transfers to Dillon Gage (*i.e.*, Question No. 1 of the jury charge).

Furthermore, because Dillon Gage knew all of the key facts regarding SCB's fraud, diversion of customer money, insolvency, and failure to pay debts, Dillon Gage cannot prove that it took the payments in good faith. The Receiver, therefore, is entitled to judgment regarding Dillon Gage's lack of good faith as a matter of law (*i.e.*, Question No. 2 of the jury charge). As a result, the Receiver requests judgment in favor of the Receiver for the full amount of the transfers that Dillon Gage[2] received, plus prejudgment and post-judgment interest.

**1. Direct evidence of actual fraud proves actual fraudulent intent, and no reasonable jury could have found the absence of fraudulent intent.**

Dillon Gage alleges that fraudulent intent "is not susceptible" to direct proof. (Resp. at 4, Doc. 233.) But Dillon Gage takes this general concept out of context and contends that even if direct proof of fraud *is* available, it should simply be disregarded. Although direct proof of fraud may *often* be unavailable, such direct evidence should be relied upon when it *is* available. And the direct evidence of SCB's actual intent to defraud in this case supports judgment as a matter of law.

---

[2] Dillon Gage alleges in its Response that the Receiver did not "make clear whether he seeks judgment against Dillon Gage Inc." (*See* Doc. 233 at 5, n.1.) However, consistent with the fact that none of the claims against Dillon Gage Inc. were submitted to the jury, all references to "Dillon Gage" in the Receiver's Motion for Judgment as a Matter of Law and herein are to Dillon Gage Inc. of Dallas.

This Court has written that "TUFTA includes a non-exhaustive list of eleven 'badges of fraud' from which [fraudulent] intent can be inferred," but it still remains true that "plaintiffs may also prove fraudulent intent through the use of direct evidence." *Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-cv-3806-B, 2014 WL 7272596, at *11 (N.D. Tex. Dec. 22, 2014) (Boyle, J.). Another Texas federal court has stated — in an opinion cited by Dillon Gage — that a party "may prove intent through either direct evidence or circumstantial evidence." *Ingalls v. SMTC Corp. (In re SMTC Mfg. of Tex.)*, 421 B.R. 251, 299 (Bankr. W.D. Tex. 2009). TUFTA's "badges of fraud" exist because it is "often difficult to find direct evidence that a transfer was made with the actual intent to 'hinder, delay, or defraud' a creditor." *Faulkner v. Kornman (In re The Heritage Org., L.L.C.)*, 413 B.R. 438, 468 (Bankr. N.D. Tex. 2009). Such evidence does exist in some cases, however, and can be used to prove intent. The *In re Heritage Organization* court cited direct evidence that the debtor made distributions to its members largely to stave off concerns about its solvency. *Id.* at 471. The court found that the "logical inference from just these facts is that Heritage decided to make distributions to its members . . . to hinder or delay [creditors'] efforts to recover that investment." *Id.* This direct evidence, combined with evidence of some "badges of fraud," led the court to conclude that there was fraudulent intent. *Id.* at 484.

Where the defendant "admits the fraud" or "the evidence indisputably reveals" the debtor's intent, the Fifth Circuit has held that "[i]ntent to defraud . . . can be decided as a matter of law." *BMG Music v. Martinez*, 74 F.3d 87, 90 (5th Cir. 1996) (affirming summary judgment that transfer was made with fraudulent intent); *see also Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 788 (Tex. 2014) (affirming summary judgment where "conclusive evidence" established that the transfer was made to hinder, delay, or defraud creditors). Likewise "a

transfer that enables the defendant to commit a fraudulent act constitutes a fraudulent transfer." *Smith v. Suarez (In re IFS Fin. Corp.)*, 417 B.R. 419, 440 (Bankr. S.D. Tex. 2009) (citation omitted) (finding fraudulent intent when the debtor made transfers despite the fact that its business was systemically not profitable and "the revenue-generating businesses could not have reasonably been expected to fund the operations").

The Receiver presented direct and undisputed evidence of SCB's intent to defraud — most notably the recorded calls between SCB and Dillon Gage discussing SCB's plan to divert customer money to other purposes (in addition to trial testimony concerning same). *See, e.g.*, PX-160 (App. 65-85); PX-162 (App. 87-96); PX-168 (App. 98-104); Trial Tr. 3 at 11-16 (App. 13-17), 26 (App. 18), 30 (App. 19). SCB's admissions on the calls — of its plan to divert money from the Gallery's sale — was a de facto admission of fraudulent intent. Faced with such unambiguous evidence, "the facts and inferences point so strongly and overwhelmingly in favor of [a finding of fraudulent intent] that reasonable men could not arrive at a contrary verdict." *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (quotation omitted). In the absence of controverting evidence, there was no basis for the jury's verdict that the six transfers were not made with actual intent to defraud.

2. **Direct and undisputed evidence proves that SCB defrauded the Gallery, a creditor of SCB, with respect to SCB's $3 million transfer to Dillon Gage.**

The direct evidence proving SCB's intent to defraud the Gallery (a creditor of SCB) when it made the $3 million transfer to Dillon Gage on February 2, 2009 is clear, substantial, and undisputed. As the Court is aware, the Gallery placed an order for 101 gold bars with SCB and then transferred $3 million to SCB in full payment of that order. SCB took that money and, instead of obtaining the gold bars as the Gallery requested, used the funds to pay off SCB's old, unpaid debts to Dillon Gage.

Every witness at trial agreed that the Gallery would never have sent its money to SCB if it knew that SCB planned to use it to pay down old debts. Indeed, Mr. Terry — former vice president of SCB — testified that the truth about what SCB planned to do with the gold bar funds would have been an "important" and "material fact" to the Gallery and "would make a difference to whether they sent the money or not." Trial Tr. 3 at 14 (R. App. at 561). With respect to SCB, all of the elements of common-law fraud, and indeed all the elements of the crime of wire fraud, were conclusively proven by the evidence. *See, e.g., U.S. v. Dowl*, 619 F.3d 494, 499 (5th Cir. 2010) ("To prove wire fraud under 18 U.S.C. § 1343, the government must prove: (1) a scheme to defraud and (2) the use of . . . wire communications in furtherance of the scheme." (quotation omitted)); *U.S. v. Hoffman*, No. 14-022, 2015 WL 1509484, at *4 (E.D. La. Apr. 1, 2015) (quoting wire fraud pattern jury instructions for the principle that "[a] representation [as part of a scheme] would also be 'false' if it constitutes a half truth, or effectively omits or conceals a material fact").

Dillon Gage does not point to any evidence from which a rational contrary conclusion could be drawn. Instead, Dillon Gage claims SCB could not have intended to defraud the Gallery because SCB's employees later said that they could have found some (albeit uncertain) way to pay for the Gallery's gold-bar order by the time of delivery (which was only a few weeks away). But SCB's intent "to fulfill the Gallery's order" is irrelevant ― subjective intent to harm the victim is not required to prove fraud; instead, what matters is the Defendant's intent that the victim rely on the misrepresentation or omission. See, e.g., *Sheets v. Wells Fargo Bank, N.A.*, No. 3:12-cv-4534-N, 2013 WL 5914404, at *5 (N.D. Tex. Sept. 11, 2013) (Godbey, J.) (fraud elements); *CDI Corp. v. GT Solar Inc.*, No. H-11-3487, 2013 WL 873785, at *2 (S.D. Tex. Mar. 7, 2013) (fraud by nondisclosure elements). SCB actually intended to — and did — defraud the

Gallery by taking its money for a pre-paid order and, without telling the Gallery, diverting it to pay for SCB's old bills (because SCB had no other cash to pay those bills).

A defendant cannot defeat a fraud claim by asserting "it doesn't matter that I lied to get the victim's money because I was going to find a way to pay it back." Dillon Gage's argument is an extension of its trial theme: namely, that SCB's fraud was just business as usual. But "business as usual" is likewise not a defense to fraud. Dillon Gage's position would exonerate Allen Stanford for defrauding investors and misapplying their money, as long as he "planned" to find some way to make payments to the investors when they became due.

It was fraud for SCB to take the Gallery's money for a pre-paid order and then — without the authorization of or disclosure to the Gallery — use that money for something other than funding the order. Because the direct, undisputed evidence showed that SCB intended to defraud the Gallery when it made the $3 million payment to Dillon Gage, the jury's verdict must be set aside with respect to the February 2, 2009 transfer.

3. **Direct and circumstantial evidence also proves SCB's actual intent for all six of the transfers, not just the $3 million transfer.**

The evidence of fraudulent intent was atypically direct and specific with regard to the February 2nd transfer to Dillon Gage of $3 million. But that direct evidence — combined with other circumstantial evidence of actual intent to hinder, delay, or defraud SCB's creditors — also compels a finding of fraudulent intent as to all six of the transfers to Dillon Gage. The jury's verdict of no fraudulent transfer was, therefore, not supported by sufficient evidence and should be set aside.

The evidence (via forensic analyses of SCB's solvency and a presumption of insolvency due to SCB's failure to pay its debts) showed conclusively that SCB was insolvent, which is one circumstantial "badge of fraud" under TUFTA. *See* TEX. BUS. & COM. CODE ANN. §

24.005(b)(9); *see also id.* § 24.003 (defining insolvency). Dillon Gage argues that Ms. Van Tassel testified only that SCB lacked the "*ability* to pay debts as they became due." (Resp. at 6, Doc. 233). But obviously an entity that is "unable" to pay its debts is by definition not paying debts as they become due and is, therefore, presumed insolvent under TUFTA. *See* TEX. BUS. & COM. CODE ANN. § 24.003(b). Moreover, Dillon Gage conveniently ignores Joe Frisard's admission concerning this issue: "Q: [SCB] didn't pay their debts when they became due, correct? A: Technically I guess you could say that." Trial Tr. 2 at 145 (R. App. 365). All evidence proved that SCB was insolvent, establishing that badge of fraud as a matter of law.

SCB was also diverting money from other customer orders — not just the Gallery's order — on a regular basis and did not disclose that diversion to its customers. The evidence of this fraudulent pattern was overwhelming at trial. Money from customer orders went into SCB's operating account and was used to pay vendors, rent, or buy inventory for SCB's own needs — not to pay for product to fulfill that customer's order. *See* Trial Tr. 3 at 48 (R. App. 595) (Terry Test.). Even Dillon Gage recognized that SCB was using money from prepaid orders and misapplying those funds for other purposes. *See* PX 160 at 6 (App. 70), 8 (App. 72). This direct and circumstantial evidence not only establishes intent to defraud those customers, but it also establishes an additional badge of fraud: specifically, "the transfer . . . was concealed." *See* TEX. BUS. & COM. CODE ANN. § 24.005(b)(3). Dillon Gage did not, and could not, offer any rebuttal to this evidence of SCB routinely diverting its customers' money during the time that all six of the disputed payments were made.

The direct evidence of fraudulent intent as to the Gallery's order — the largest transaction in SCB's history — establishes that all six payments to Dillon Gage were the fruit of the same poisonous SCB tree. Notably, SCB's fraud upon the Gallery began, at the latest, on

January 20, 2009 — the date when the undisputed evidence shows that the Gallery called Joe Frisard to purchase gold bars, when Terry Hanlon of Dillon Gage *was actually sitting in the room with Mr. Frisard and witnessed the call*, and when the plan to divert the Gallery's money was born. *See, e.g.*, Trial Tr. 4 at 129 (App. 57) (Hanlon Test.). In other words, Terry Hanlon was on the ground floor of the fraud upon the Gallery. In addition, that Gallery-related transaction also provides evidence of another circumstantial badge of fraudulent intent, because SCB made all of the payments to Dillon Gage shortly before and after it incurred that large debt owed to the Gallery, for which it lacked the ability to pay. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b)(10). All of the foregoing badges of fraud, in combination with direct evidence of actual intent, require the Court to set aside the jury's verdict and enter judgment in the Receiver's favor, as a matter of law, for all six transfers to Dillon Gage.

**4. The Receiver proved actual fraudulent intent for purposes of TUFTA and did not purport to assert a claim for fraud on behalf of the Gallery.**

Dillon Gage makes a number of misplaced arguments about the Receiver's standing to bring claims on behalf of the Gallery. But the Receiver has not asserted *any* claim on behalf of the Gallery against Dillon Gage. Instead, he has proven SCB's fraudulent intent by direct evidence that SCB intended to defraud at least one of its creditors when it transferred more than $3 million to Dillon Gage on February 2, 2009, as well as intended to hinder, delay, or defraud its other creditors with respect to all six transfers to Dillon Gage. Presenting evidence identifying a particular creditor (*i.e.*, the Gallery) who was defrauded is not the same as asserting a fraud claim on behalf of that creditor.

The Receiver is permitted to bring "TUFTA claims on behalf of the Stanford entities." *Janvey. v. Brown*, 767 F.3d 430, 437 (5th Cir. 2014). Such are the claims here: the Receiver has brought claims against Dillon Gage on behalf of SCB's estate. To prove the disputed transfers

from SCB to Dillon Gage were fraudulent, the Receiver presented evidence of SCB's "actual intent to hinder, delay, or defraud *any* creditor of the debtor." *Id.* at 438 (emphasis added); *see also* TEX. BUS. & COM. CODE ANN. § 24.005(a)(1) (same). Clearly, the Gallery qualifies as "any creditor" of SCB. This is unquestionably an appropriate way for the Receiver to meet his burden and has nothing to do with his standing to bring the claims in this case.

**5. Contrary to Dillon Gage's assertions, the Receiver has always alleged that SCB intended to defraud its creditors.**

Dillon Gage's claim that SCB's fraud on the Gallery was raised for the first time in the Receiver's renewed motion for judgment as a matter of law is spurious. The Receiver has always claimed that SCB intended to defraud its creditors through the transfers to Dillon Gage. In his Complaint, the Receiver asserted that "[t]he payments from the Stanford Parties to Dillon Gage were made with *actual intent to* hinder, delay, and *defraud* the Stanford Parties' creditors." (Doc. 1 at 2 (emphasis added)). In addition, the Receiver argued in his summary judgment motion, *inter alia*, that SCB "fraudulently transferred" money for the Gallery order to Dillon Gage. (Doc. 27 at 14.) In the Joint Pretrial Order, the Receiver listed as a contested legal issue "[w]hether the evidence establishes conclusively as a matter of law that the transfers from SCB to Dillon Gage were made with actual intent to hinder, delay, or *defraud* Stanford's creditors." (Doc. 157 at 24 (emphasis added).) And in his pre-verdict Rule 50 motion, the Receiver asserted that SCB was "intentionally diverting customer money to keep its doors open." (Doc. 217 at 7.)

Dillon Gage cannot fairly claim to be surprised by the Receiver's assertion that SCB's actual intent to defraud the Gallery was an issue in the case. Indeed, Dillon Gage laid out its own theory of the February 2, 2009 Gallery-related transaction in its factual account in the Joint Pretrial Order, (*see* Doc. 157 at 14-15), and listed as a contested factual issue "[w]hether . . . any transfer that SCB made to Dillon Gage in January and February of 2009 . . . was fraudulent" (*id.*

at 23). SCB's deceptive conduct with respect to the Gallery was one of the central disputed issues being litigated, and Dillon Gage has no basis now to claim otherwise. As a result, the Court should disregard this baseless argument.

**6. As a matter of law, Dillon Gage's good-faith defense fails.**

Finally, the evidence concerning Dillon Gage's lack of good faith was overwhelmingly one-sided and, ultimately, was embraced by Dillon Gage: all evidence proves Dillon Gage took the transfers from SCB knowing about its fraud and its failure to generally pay its debts as they became due (*i.e.*, insolvency). As a result, no rational jury could find Dillon Gage acted in good faith when it accepted millions of dollars from SCB despite knowing about its plan to defraud the Gallery, diversion of customer funds, lack of cash, millions in unpaid bills, and loss of credit from Stanford's banks. The phone transcripts and Dillon Gage's own testimony established all of these facts. Because Dillon Gage failed to put forward sufficient evidence to support a verdict of good faith, the Receiver is entitled to judgment as a matter of law on that issue.

## CONCLUSION

For these reasons, the jury's verdict is not supported by sufficient evidence and must be set aside. The Receiver requests that the Court enter judgment as a matter of law that: (a) all six of the transfers to Dillon Gage were fraudulent; (b) Dillon Gage lacked good faith when it took those six transfers; (c) the Receiver is entitled to judgment in the amount of $5,120,155.67; and (d) the Receiver is entitled to prejudgment and postjudgment interest on the foregoing amount. The Receiver also requests such other and further relief to which he may be justly entitled, including attorneys' fees and costs.

| | |
|---|---|
| Dated:  September 11, 2015 | Respectfully submitted,<br>**BAKER BOTTS L.L.P.**<br><br>By: */s/ Kevin M. Sadler*<br>    Kevin M. Sadler<br>    Texas Bar No. 17512450<br>    kevin.sadler@bakerbotts.com<br>    David T. Arlington<br>    Texas Bar No. 00790238<br>    david.arlington@bakerbotts.com<br>    Brendan A. Day<br>    Texas Bar No. 24052298<br>    brendan.day@bakerbotts.com<br>    1500 San Jacinto Center<br>    98 San Jacinto Blvd.<br>    Austin, Texas 78701-4039<br>    (512) 322-2500<br>    (512) 322-2501 (Facsimile)<br><br>    Timothy S. Durst<br>    Texas Bar No. 00786924<br>    tim.durst@bakerbotts.com<br>    Christopher Norfleet<br>    Texas Bar No. 24070338<br>    christopher.norfleet@bakerbotts.com<br>    2001 Ross Avenue<br>    Dallas, Texas 75201<br>    (214) 953-6500<br>    (214) 953-6503 (Facsimile)<br><br>**ATTORNEYS FOR RECEIVER RALPH S. JANVEY** |

## CERTIFICATE OF SERVICE

       On September 11, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I will serve all counsel of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

                                            */s/ Kevin M. Sadler*
                                            Kevin M. Sadler